PASQUALINA MEROLA ET AL. *v.* J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION, ET AL.
(8031)

BORDEN, DALY and LAVERY, Js.

Argued February 7—decision released May 4, 1990

*John T. Grillo,* with whom, on the brief, was *Albert R. Annunziata,* for the appellants (plaintiffs).

*Raymond J. Plouffe, Jr.,* for the appellee (named defendant).

*Patricia A. Cofrancesco,* assistant corporation counsel, for the appellee (defendant city of New Haven).

BORDEN, J. The plaintiffs[1] appeal from the judgment of the trial court following the court's granting of motions for directed verdict filed by the defendants.[2] The plaintiffs claim that the court erred in directing the verdict and in making two evidentiary rulings. We find no error.

On July 18, 1983, the plaintiff fell at the intersection of Oakly Street and Frontage Road in New Haven. Oakly Street, a town road, runs in a generally north-south direction. Frontage Road, a state highway, runs generally east and west. Oakly Street, east of its intersection with Frontage Road, leads to an eastbound ramp connecting to I-95. The Oakly Street-Frontage Road intersection is north of the intersection of Oakly Street and Main Street.

The plaintiff gave timely notice of her fall to both the city of New Haven and the state commissioner of transportation. The notice described the place of the accident as follows: "On Oakley [sic] Street, at a location north of Main Street, and approximately 4 feet 6 inches east of U.I. Company pole number 6516, approximately

---

[1] The plaintiffs are the named plaintiff and her husband, Anthony Merola. We refer herein to the named plaintiff as the plaintiff.

[2] The defendants are the state commissioner of transportation and the city of New Haven.

18 feet west of the westerly curb of the median on Oakley [sic] Street and approximately 56 feet south of the northerly curb of the I-95 highway ramp." The notice further described the defect giving rise to the accident as follows: "A depression-hole in said street measuring approximately 2 feet long, five inches wide and two and one-quarter inches deep, causing a hazardous condition for pedestrians walking without benefit of a sidewalk at said location."

Thereafter, the plaintiff sued both the commissioner and the city of New Haven, pursuant to General Statutes §§ 13a-144 and 13a-149, respectively. As against each defendant, the plaintiff alleged that she fell while walking on the west shoulder area of Oakly Street, north of its intersection with Main Street, that there were no sidewalks on Oakly Street, and that the sole proximate cause of her injuries was the breach of the particular defendant's statutory duty to maintain the roadway. At the end of the plaintiff's case, the court directed verdict for the defendants on two grounds. First, the plaintiff had not introduced sufficient evidence to prove that the location of the defect that had caused her to fall was the same as that described in her notice, and, second, because the plaintiff had sued the two defendants in the alternative and because she had the burden of proving that the liability of either was the sole proximate cause of her injuries, she had not introduced sufficient evidence to prove which governmental defendant had the duty to maintain the highway where she had fallen. After the court denied the plaintiff's motion to set aside the verdict, this appeal followed.

The plaintiff's two evidentiary claims of error involve evidence tending to show that the city was responsible for maintaining the area where she fell. At oral argument in this court, the plaintiff conceded that, even

if she were to prevail on those two claims, the directed verdict in favor of the city of New Haven was proper. This concession renders it unnecessary for us to consider the plaintiff's appeal regarding that defendant, including the evidentiary claims. We turn, therefore, to the plaintiff's claims of error regarding the directed verdict in favor of the commissioner.

The standard of review of directed verdicts is well settled. A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion. *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Golembeski* v. *Metichewan Grange No. 190,* 20 Conn. App. 699, 701, 569 A.2d 1157 (1990). On reviewing the action of the trial court in first directing and thereafter refusing to set the verdict aside, the evidence must be considered in the light most favorable to the plaintiff. *Morales* v. *Trinity Ambulance Service,* 9 Conn. App. 386, 387–88, 519 A.2d 90 (1986), cert. dismissed, 202 Conn. 806, 520 A.2d 1287 (1987). While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven; *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 529, 562 A.2d 1100 (1989); it may not resort to mere conjecture and speculation. *Burke* v. *West Hartford,* 147 Conn. 149, 151–52, 157 A.2d 757 (1960). If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.,* 5 Conn. App. 579, 584, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986).

The plaintiff claims that the court erred because sufficient evidence was introduced to prove that the location of the highway defect in question comported with that described in her statutory notice, and that the commissioner had the statutory duty to maintain that por-

tion of the highway where the defect existed. We conclude that, although the plaintiff sufficiently proved the location of the highway defect in question to be in accordance with her statutory notice, she failed to introduce sufficient evidence to prove that the commissioner was responsible for maintaining that portion of the highway where the defect existed.

With respect to location of the defect, there was sufficient evidence from which the jury could infer that the plaintiff fell because of the defect at the location described in her notice. There was evidence that as the plaintiff was rounding the bend from Frontage Road onto Oakly Street, she fell because of a crack in the pavement that was approximately two feet long and five inches wide. There were also photographs of the intersection, showing a utility pole located in the grass abutting the cracked pavement, and a median at the intersection of Frontage Road and Oakly Street east of the pole and the cracked pavement. The plaintiff testified that the place of her fall was approximately three or four feet into Oakly Street from the bend in the road, and she indicated that location by a mark on one of the photographs of the intersection. There also was evidence that most of the pavement was cracked in that area, that the particular crack in question was approximately two feet from the edge of the grass bordering the pavement, and that there was an electric utility pole located in the grass approximately two feet from the edge of the pavement. Further, there was evidence that the pole number near the defect matched the pole number stated in the notice.

This evidence was sufficient for the jury to infer that the place and cause of the plaintiff's fall were generally those specified in the notice, namely, on Oakly Street, north of Main Street, approximately four feet east of utility pole number 6516 and west of the west

curb of the median located at the intersection of Oakly Street and Frontage Road. It is true that the plaintiff was required to prove that the defect alleged in her notice was the sole proximate cause of her injuries; see *Krooner* v. *Waterbury,* 105 Conn. 476, 481, 136 A. 93 (1927); and that General Statutes § 13a-144, as a statutory action, must be strictly construed. *Ozmun* v. *Burns,* 18 Conn. App. 677, 680, 559 A.2d 1143 (1989). That does not mean, however, that her proof was required to match her notice with exactitude. See *Krooner* v. *Waterbury,* supra, 480–81.

Whether the proof is within the scope of the notice must be determined with reference to the language and purpose of General Statutes § 13a-144. Id., 481. General Statutes § 13a-144 requires that the notice of the plaintiff's injury contain "a *general* description . . . of the cause thereof and of the time and place of its occurrence . . . ." (Emphasis added.) The purpose of the statutory notice is to give the commissioner sufficient information to permit him to make proper inquiry and investigation in order to protect his interest, and to give him a reasonable guide to such inquiry and investigation as is helpful for his protection. *Morico* v. *Cox,* 134 Conn. 218, 223, 56 A.2d 522 (1947); *Shine* v. *Powers,* 37 Conn. Sup. 710, 711–12, 435 A.2d 375 (1981). " '[S]ufficiency [of notice] is to be tested with reference to that purpose, and in applying the test the circumstances of each case are to be considered. If, under the circumstances of a given case, the notice is sufficient for its intended purpose, it will be regarded a good notice.' *Delaney* v. *Waterbury & Milldale Tramway Co.,* 91 Conn. 177, 181, 99 Atl. 503 [1916]. The breadth of proof under the complaint may not be permitted to go beyond such defects as are fairly embraced within the notice so construed . . . ." *Krooner* v. *Waterbury,* supra.

Evaluating the plaintiff's evidence in light of these principles, and construing her notice accordingly, we conclude that the plaintiff's evidence locating the defect was "fairly embraced within the notice so construed." Id. Moreover, under the facts of this case, it was not fatal to the plaintiff's case that there was no evidence of the other two dimensions stated in the notice, namely, approximately eighteen feet west of the west curb of the median and approximately fifty-six feet south of the north curb of the I-95 highway ramp. Those dimensions provided additional particularity by which the commissioner could locate the alleged defect for purposes of his investigation. The plaintiff, however, was not required to introduce evidence of those specific dimensions, as long as the evidence that was introduced was sufficient to establish the location of the defect within the general terms of the notice.

The plaintiff also claims that the court erred in directing a verdict in favor of the commissioner on the ground that she did not prove that the defect existed on that portion of the highway that the commissioner had the duty to maintain. We disagree.

As indicated above, the accident occurred at the intersection of a state highway, Frontage Road, and a town road, Oakly Street. For the commissioner to be held liable, the plaintiff was required to establish that the breach of his statutory duty was the sole proximate cause of her injuries. *Williamson* v. *Commissioner*, 209 Conn. 310, 318, 551 A.2d 704 (1988). It follows, therefore, that the plaintiff had the burden of proving that the commissioner had the statutory duty to maintain the portion of the roadway where the defect was located.

The plaintiff's evidence was that she was walking east on the south edge of Frontage Road and that she fell as she rounded the bend from Frontage Road onto

Oakly Street. The plaintiff described the location of the defect as approximately three or four feet in from the bend on Oakly Street, and marked that area on a photograph of the intersection. That mark on the photograph indicates that the location of the defect was on the bend from Frontage Road to Oakly Street, near the utility pole. The photographs and maps in evidence indicate that the intersection of the two roads is not well defined, and that the two roads do not intersect at right angles. Rather, the south edge of Frontage Road curves in a southerly direction and at some undefined location blends into the west edge of Oakly Street. There is a triangular median in the intersection that extends from approximately the center line of Frontage Road to a short distance into Oakly Street. There is, however, no line of demarcation indicating precisely where Oakly Street ends and Frontage Road begins. The plaintiff also introduced a response by the commissioner to an interrogatory in which the commissioner admitted that "[t]he area where the plaintiff allegedly fell is within the state right-of-way." On the basis of this evidence, therefore, it is fair to say that while the defect existed on the bend in the road at the intersection of Frontage Road and Oakly Street, no further particularity of the location could reasonably be inferred. That is, it was unclear whether the defect was solely on Frontage Road, solely on Oakly Street or at the intersection of the two roads.

Three statutes are involved in this case. General Statutes § 13a-149[3] imposes liability on a municipality for defective roads or bridges that it is "bound to keep . . . in repair." General Statutes § 13a-144[4] imposes

[3] General Statutes § 13a-149 provides in pertinent part: "Any person injured in person . . . by means of a defective road or bridge may recover damages from the party bound to keep it in repair."

[4] General Statutes § 13a-144 provides in pertinent part:. "Any person injured in person . . . through the neglect or default of the state or any of its employees by means of any defective highway . . . which it is the

liability on the commissioner for defective highways "which it is the duty of the commissioner of transportation to keep in repair . . . ." Under these two statutes, therefore, whether a municipality or the commissioner is found liable for injuries caused by a defective road or highway, depends on who has the duty of keeping that particular road or highway in repair. Thus, under this statutory scheme, the commissioner would be responsible for the defect if it was on Frontage Road, and the city of New Haven would be responsible for the defect if it was on Oakly Street.

Where, however, a town road and a state highway intersect, as in this case, a third statute applies. General Statutes § 13a-99a governs the allocation of ownership of town-state intersections. General Statutes § 13a-99a, which is entitled "Town roads lying within, intersecting or crossing state highway rights-of-way," provides: "(a) Whenever a town road or a portion thereof lies within the limits of a state highway right-of-way or passes over or under a state highway right-of-way, such road or portion thereof shall be state highway property subject to an easement to the town for travel." Thus, where a state highway right-of-way covers some portion of a town road, the state owns that portion of the town road subject to an easement to the town for travel.

The allocation of ownership between the state and town under § 13a-99a (a), however, does not control the allocation of the duty to maintain an intersection of a state highway and a town road. That allocation is made pursuant to § 13a-99a (c). That subsection provides in pertinent part as follows: "When a town road crosses or intersects a state highway right-of-way at grade

duty of the commissioner of transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the superior court."

level, *the responsibility for maintenance of that portion of the town road from the edge of the state highway right-of-way to the edge of traveled portion of the state highway shall remain with the town;* and any liability for neglect or default of maintenance of such portion of the town road shall be in accordance with section 13a-149." (Emphasis added.) As the language of this statute indicates, a *state highway right-of-way* does not necessarily coincide with *the traveled portion of the state highway.* Indeed, as the map in evidence in this case discloses, the width of the state highway right-of-way may very well exceed the traveled portion of the state highway. The traveled portion of a road or highway is that part of the highway that is constructed so as to be intended for travel; see *Kurtz* v. *Morse Oil Co.,* 114 Conn. 336, 341, 158 A. 906 (1932); and includes the shoulders of the highway. *Griffith* v. *Berlin,* 130 Conn. 84, 87, 32 A.2d 56 (1943).

Where a state highway and town road intersect at grade level, as in this case, General Statutes § 13a-99a (c) expressly allocates the responsibility for maintenance of a certain portion of the intersection to the municipality, namely, "that portion of the town road from the edge of the state highway right-of-way to the edge of the traveled portion of the state highway . . . ." By implication, the statute allocates the responsibility for maintenance of the balance of the intersection to the commissioner, namely, that portion of the intersection that constitutes the traveled portion of the state highway. Put another way, at an intersection of a town road and state highway, the town has the duty to maintain, not only the portion of the town road that is outside of the state highway right-of-way, but also that portion of the town road that is within the state highway right-of-way exclusive of the traveled portion of the state highway. Thus, the commissioner has the duty to maintain only the traveled portion of the state highway.

It is apparent, therefore, that where a plaintiff elects to sue the commissioner for injuries incurred as a result of a defect existing at an intersection of a state highway and town road, the plaintiff must establish that the defect existed not only within the state highway right-of-way, but also within the traveled portion of the state highway. That necessarily means that such a plaintiff must establish the location of the defect with respect to the location of the traveled portion of the state highway and not simply with respect to the state highway right-of-way. That, in turn, requires that the plaintiff establish the location of the defect with respect to the line of demarcation between the traveled portion of the state highway and the town road.

We conclude that the plaintiff failed to remove the location of the edge of the traveled portion of the state highway from the area of jury speculation, and thus failed to establish that the defect existed both within the state highway right-of-way and within the traveled portion of the state highway. She did produce enough evidence from which the jury could have inferred that the defect was within the state highway right-of-way and that the defect was in the traveled portion of either a town road or a state highway.

The plaintiff failed, however, to produce enough evidence to support a finding that the defect existed on the traveled portion of Frontage Road, which the state had the duty to maintain, as opposed to the traveled portion of Oakly Street, which the town had the duty to maintain. Because the line of demarcation between the traveled portion of Oakly Street and Frontage Road was never established, and because the plaintiff's evidence, taken at its best, located the defect somewhere at the curve of the west edge of that intersection, the jury would have been required to speculate regarding whether the defect existed either (1) within the trav-

eled portion of Frontage Road, in which case the commissioner would have been liable, or (2) within the traveled portion of Oakly Street between the state highway right-of-way line and the edge of the traveled portion of Frontage Road, in which case the city would have been liable. Neither the maps, the photographs, nor the testimony received into evidence was sufficient to take that issue out of the realm of speculation. See *Burke* v. *West Hartford,* supra.

The plaintiff argues that a certain "X" mark appearing on a state highway map introduced by her, taken together with the commissioner's admission that the place of the alleged incident was within the state highway right-of-way, sufficiently supports an inference to avoid a directed verdict in favor of the commissioner. We disagree. It is true that the mark appears on a map produced by the commissioner in response to the plaintiff's request for a map "of the site of the alleged incident." It is also true that the mark corresponds to the general location of the defect as alleged in her notice and complaint. There was no evidence, however, of the purpose or intended meaning of the mark, and its unexplained presence on the commissioner's map was an insufficient basis for a rational inference regarding it. More significant, there was no evidence that its location on the map was within the traveled portion of Frontage Road. Thus, this unexplained part of the exhibit added nothing to support the plaintiff's proof that the commissioner had a statutory duty to maintain that portion of the road where the defect existed.

There is no error.

In this opinion the other judges concurred.