LOUISE GILES *v.* CITY OF NEW HAVEN ET AL.
(10952)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

Argued October 2, 1992—decision released January 26, 1993

*Steven J. DeFrank,* with whom, on the brief, was *David A. Leff,* for the appellant (plaintiff).

*Constance L. Epstein,* for the appellee (defendant Otis Elevator Company).

DUPONT, C. J. The plaintiff appeals from a directed verdict, granted by the trial court at the close of the plaintiff's case, in favor of the defendant Otis Elevator Company[1] in an action for personal injuries, claiming that the trial court improperly directed a verdict for the defendant.[2] The sole issue of the appeal is whether the trial court should have concluded, as a matter of law, that the doctrine of res ipsa loquitur could be applied, and, therefore, that the case should have been submitted to the jury. We conclude that the court should have done so, and, therefore, that it was improper for the trial court to direct a verdict for the defendant.

The plaintiff brought suit against the defendant alleging that the defendant was negligent in failing to inspect, maintain and repair the elevator that she was operating, including its compensation chain[3] and in failing to warn her of the defective compensation chain. The plaintiff argues that she presented sufficient evidence for the jury to infer negligence of the defendant because it failed to inspect, maintain and repair the compensation chain of the elevator, and that, therefore, the case should have been submitted to the jury under the doctrine of res ipsa loquitur. We agree.

---

[1] We refer herein to the defendant Otis Elevator Company as the defendant. The prior granting of summary judgment for the defendant city of New Haven is not part of this appeal.

[2] The plaintiff also claims that the trial court should not have admitted certain evidence. In view of our disposition of her first claim, it is unnecessary to reach the second claim.

[3] A compensation chain is a balancing mechanism that compensates for the transfer of weight during an elevator's operation. The chain involved in this case was approximately 120 feet in length, extending through the twelve stories of the building, and weighed approximately 360 pounds.

Directed verdicts are not favored, but may be upheld if the jury could not reasonably and legally have reached a conclusion other than in the moving party's favor. *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Merola* v. *Burns,* 21 Conn. App. 633, 636, 575 A.2d 1025 (1990). In reviewing the trial court's action in directing a verdict for the defendant, and subsequently refusing to set aside the verdict, we must view the evidence in a light most favorable to the plaintiff. *Petyan* v. *Ellis,* supra; *Merola* v. *Burns,* supra. A plaintiff's case may be established by inferences drawn from circumstantial evidence, but such inferences must be logical and reasonable, and cannot be based on mere conjecture and speculation. *Boehm* v. *Kish,* 201 Conn. 385, 389, 517 A.2d 624 (1986); *Merola* v. *Burns,* supra.

The plaintiff's claim is dependent on whether the trial court as a matter of law could conclude that the doctrine of res ipsa loquitur should be applied, and the case be allowed to go to the jury. The plaintiff presented no direct evidence of malfunction of the elevator, nor of any defect in the compensation chain, maintenance related or otherwise, to require the submission of the question of the defendant's negligence to the jury, but instead relies on the doctrine of res ipsa loquitur in order to require the submission of the defendant's negligence to the jury.

When the doctrine of res ipsa loquitur is invoked, it permits the jury to infer negligence when no direct evidence of negligence has been introduced. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* 206 Conn. 439, 441–42, 538 A.2d 690 (1988); *Schurgast* v. *Schumann,* 156 Conn. 471, 479–81, 242 A.2d 695 (1968). The doctrine neither creates a presumption in favor of the plaintiff nor shifts the burden to the defendant, but merely permits the inference of negligence to be drawn from the circumstances of the incident. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 442; *Ryan* v. *George L. Lilley Co.,*

121 Conn. 26, 30, 183 A. 2 (1936). Thus, the doctrine allows the plaintiff to avoid a directed verdict without directly establishing negligence. It is a rule of circumstantial evidence that allows an inference of negligence if the accident is a type that ordinarily does not occur in the absence of a defendant's negligence. The doctrine allows an inference to be drawn as to why the accident happened. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra. The determination of whether the doctrine applies is a question of law. Id., 443.

In Connecticut, three conditions must be met for a case to be submitted to the jury on the theory of res ipsa loquitur. They are as follows: " '(1) The situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged with neglect. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.' " Id., quoting *Schurgast* v. *Schumann,* supra.

Whether the doctrine of res ipsa loquitur applies is a matter of law for the initial determination of the trial court, and, therefore, the court must examine the possible causes of the occurrences in order to determine whether the case should be submitted to the jury. *Watzig* v. *Tobin,* 292 Or. 645, 651 n.5, 642 P.2d 651 (1982). The court takes into account how accidents of this kind usually occur and the evidence introduced; id.; applying common sense as a factor in the mix. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 448. If the court decides "that the probabilities of non-negligent causes are as great or greater than the probability of a negligent cause attributable to the defendant [the court] withdraws the case from the jury." *Watzig* v. *Tobin,* supra. On the other hand, if by using the evidence and

the trial court's own understanding of how similar accidents occur, the court concludes that the probability of a negligent cause attributable to the defendant is as great or greater than the probability of nonnegligent causes, then the case is submitted to the jury. "The conclusion thus reached by the trial judge is tentative only because the jury may conclude otherwise." Id. When the court is of the opinion that the probability of the defendant's negligence is greater than the probability of other causes, the jury is entitled to reach the same conclusion. Id.

In this case, the trial court could reasonably have considered certain facts in determining whether the doctrine of res ipsa loquitur applies. For fourteen years, the plaintiff was an elevator operator for one of the three elevators in the Powell Building in New Haven. On the date her injuries were sustained, the elevator she was operating was ascending from the first floor to the twelfth floor when its compensation chain became hooked on a rail bracket located on the wall of the elevator shaft. The plaintiff was not able to control the movement of the chain from the interior of the cab. Once hooked, the chain then tightened up and broke free from two bolts securing it to the underside of the cab. The cab began to shudder and shake, and the plaintiff struck her head and shoulder against the walls of the cab. The chain then fell to the bottom of the elevator shaft with a loud crash, which frightened the plaintiff. Upon hearing the crash, the plaintiff, fearing for her safety, reversed the direction of the elevator as it was approaching the twelfth floor. She directed the elevator to the nearest floor, the eleventh, where she jumped from the cab sustaining additional injuries. At the time the plaintiff received her injuries, the defendant had a longstanding exclusive contract with the building owner to maintain and inspect the elevator and its component parts. The elevator was installed

by the defendant approximately sixty-one years before the accident. William Hendry, the defendant's district maintenance supervisor, testified that the accident was caused by the compensation chain's becoming hooked on a rail bracket in the elevator shaft due to excessive sway of the chain. Hendry further testified that the elevators were routinely inspected, but that neither inspection nor testing of the compensation chain was part of that routine inspection. The bolts that held the compensation chain to the underside of the elevator cab were never changed, and no one other than the defendant company touched the compensation chain or the bolts.

On cross-examination, Hendry testified that the normal sway of a compensation chain is approximately one to two inches, and in order for the chain to get hooked on a rail bracket it must sway at least eighteen inches. He further testified that for the chain to sway eighteen inches there must be some misoperation of the elevator, such as rapid reversals of direction. He had never before seen a compensation chain pulled free of an elevator cab in his thirty-seven years of employment by the defendant. He further stated that on one occasion he had seen the plaintiff make rapid reversals of direction of the elevator.

The plaintiff, however, testified that her ascension from the first to the twelfth floor was routine until she approached the twelfth floor, and that the cab began to shake and sway before she reversed its direction to the eleventh floor. She further testified that the crash of the compensation chain as it hit the bottom of the elevator shaft occurred before she reversed the direction of the cab. If a jury believed that she did not do anything to cause the shaking of the cab or the dislodging of the chain, her act of reversing the direction could not be found to have caused the occurrence.

We conclude that the plaintiff presented sufficient evidence as to each element required by the doctrine of res ipsa loquitur for the court to have submitted the question of its application to the jury. As for the first element, we agree with the parties that the accident would not have occurred unless someone was negligent. We also conclude that the third element for application of the doctrine was satisfied. The plaintiff maintains that she was not contributorily negligent. The defendant argues that she was. We conclude that even if she were contributorily negligent in reversing the direction of the elevator, in a jurisdiction that applies the doctrine of comparative negligence, such as Connecticut, any negligence on the plaintiff's part would only reduce the amount of damages, rather than bar the case from being submitted to the jury. See *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 444; *Watzig* v. *Tobin,* supra, 650 n.4. With the adoption of the doctrine of comparative negligence, a plaintiff can be a participant in the events leading up to the injuries suffered without depriving the plaintiff of the use of the doctrine of res ipsa loquitur as long as the plaintiff was not the sole cause of the injuries. See *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra. The doctrine of res ipsa loquitur may apply even if the plaintiff's actions contributed to the injury. *Watzig* v. *Tobin,* supra.

The plaintiff claims that the element of control that is necessary for an application of the doctrine has been met because she did not have any control over the compensation chain. She testified that she never touched any of the exterior parts of the elevator, and that her operation of the elevator did not constitute control of the elevator. She asserts that the defendant had exclusive control of the compensation chain because of the defendant's exclusive contract to maintain the elevator and its parts. The defendant argues that the control element was not met because the plaintiff manually

controlled the upward and downward movement of the elevator, thereby indirectly controlling the compensation chain. Because the compensation chain was attached to the elevator and responded to the movements of the elevator, the defendant asserts that the plaintiff as the person in control of the elevator had control over its attached parts. Relying on *Malvicini,* the defendant claims that the manual control of the elevator by the plaintiff negates any supposition that the defendant had exclusive control and therefore precludes the application of the doctrine of res ipsa loquitur. The facts of *Malvicini,* however, are distinguishable.

In *Malvicini,* the plaintiff, a guest at the defendant's hotel, suddenly heard a "pssst" sound and was hit by steaming hot water while he was taking a shower, causing him to fall and suffer first degree burns as well as a concussion and other injuries. The trial court refused to charge the jury on the theory of res ipsa loquitur, and the plaintiff appealed. Because there was evidence that the plaintiff had adjusted the faucets on the day in question, as well as the night before, the Supreme Court held that the plaintiff failed to meet the control element of the theory of res ipsa loquitur. The complaint in *Malvicini* alleged that the defendant had exclusive control over the instrumentality, and, thus, the court discussed control in terms of exclusivity. In the present case, the plaintiff did not allege that the defendant had exclusive control over the instrumentality. Nor is such an allegation necessary in order to seek application of the doctrine.

The *Malvicini* court stated that in order "[f]or the control condition of the res ipsa loquitur doctrine to apply, the plaintiff must adduce evidence from which the court, as a matter of law, can properly determine that a jury could reasonably draw an inference that it is more probable that not that the person whose negligence caused the injury was the defendant and not

some other party." *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 446. This statement implies that, in a jurisdiction with comparative negligence, exclusive control is not required in order to submit a case to the jury on the theory of res ipsa loquitur. Rather, the control element requires a balancing test in which a court must determine whether a rational basis exists for concluding that it was more probable than not that the plaintiff's injuries were attributable to the defendant's negligence.[4] *Malvicini* cites *Watzig* with approval. *Watzig* makes it clear that control element used as a test for the application of the doctrine need not be exclusive. The submission of the case to the jury in Connecticut requires "control of the party charged with neglect." *Schurgast* v. *Schumann,* supra, 480. The adjective, "exclusive" is conspicuously absent. *Malvicini* makes it clear that exclusive control is not a requirement for application of the doctrine, but rather a requirement that control exists and that the application supports fairness. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra.

On the facts of this case, the trial court could reasonably have determined that the probability that the plaintiff's injuries were attributable to the alleged negligent actions of the defendant was as great or greater than the probability of a negligent cause attributable to the plaintiff, and that, therefore, the case should have been submitted to the jury for its ultimate determination.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[4] This balancing test has been followed in several jurisdictions that have adopted comparative negligence. See *Dermatossian* v. *New York City Transit Authority,* 67 N.Y.2d 219, 492 N.E.2d 1200, 501 N.Y.S.2d 784 (1986); *Watzig* v. *Tobin,* 292 Or. 645, 642 P.2d 651 (1982); *Montpelier* v. *Duranleau,* 145 Vt. 237, 485 A.2d 1269 (1984).