LOUISE GILES *v.* CITY OF NEW HAVEN ET AL.
(14709)

PETERS, C. J., BORDEN, BERDON, KATZ and PALMER, Js.

---

Argued December 1, 1993—decision released February 8, 1994

*Constance L. Epstein,* with whom, on the brief, were *Richard J. Kenny* and *Ruth A. Tower,* for the appellant (defendant Otis Elevator Company).

*Steven J. DeFrank,* with whom, on the brief, was *Beatriz C. Cosculluela,* law intern, for the appellee (plaintiff).

KATZ, J. The defendant Otis Elevator Company (defendant) appeals from the Appellate Court's determination that the trial court should not have granted

the defendant's motion for a directed verdict in an action by the plaintiff, an elevator operator, to recover for the defendant's negligent failure to inspect, maintain and repair an elevator compensation chain that caused the plaintiff to sustain personal injuries. The Appellate Court concluded that the plaintiff had presented sufficient evidence to warrant presentation of the question of negligence under the doctrine of res ipsa loquitur to the jury.[1] We affirm the judgment of the Appellate Court.

As a preliminary matter, we note that this appeal is before us pursuant to the granting of a directed verdict. " 'Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion. . . .' " *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982). Thus, in the context of a res ipsa loquitur case, "[i]f the defendant seeks a directed verdict in his [or her] favor, he [or she] must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable persons could no longer accept it. The evidence necessary to do this will vary with the strength of the inference. It takes more of an explanation to justify a falling elephant than a falling brick, more to account for a hundred defective bottles than for one. If the defendant shows definitely that the occurrence was caused by some outside agency over which the defendant had no control, that it was of a kind which commonly occurs without negligence on the part of anyone, or that it could not have been avoided by the exercise of all reasonable care, the inference of negligence is no longer permissible, and the ver-

---

[1] The Appellate Court's opinion is found in *Giles* v. *New Haven,* 30 Conn. App. 148, 619 A.2d 476 (1993). We certified the following issue: "In the circumstances of this case, did the Appellate Court properly apply the doctrine of res ipsa loquitur?" *Giles* v. *New Haven,* 225 Conn. 911, 623 A.2d 1021 (1993).

dict is directed for the defendant." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 40, p. 261.

The court may withdraw a case from the jury only when there is no question as to the existence of the facts necessary to invoke the doctrine of res ipsa loquitur. "Phrased differently, the question of negligence is one of law for the court only when the facts are not in *any* event or in *any* view of the case susceptible to the inference of negligence sought to be deduced therefrom . . . ." (Emphasis added.) 57B Am. Jur. 2d 598, Negligence § 1931 (1989). Accordingly, in reviewing the trial court's decision to direct a verdict in favor of a defendant, we must consider the evidence in the light most favorable to the plaintiff and then must determine whether the jury could reasonably and legally have reached a conclusion other than one in the moving party's favor. *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Pinto* v. *Spigner,* 163 Conn. 191, 193, 302 A.2d 266 (1972).

Applying these principles, the Appellate Court reviewed the record and concluded that the trial court could reasonably have considered the following facts in deciding whether the doctrine of res ipsa loquitur applied. "For fourteen years, the plaintiff was an elevator operator for one of the three elevators in the Powell Building in New Haven. On the date her injuries were sustained, the elevator she was operating was ascending from the first floor to the twelfth floor when its compensation chain became hooked on a rail bracket located on the wall of the elevator shaft. The plaintiff was not able to control the movement of the chain from the interior of the cab. Once hooked, the chain then tightened up and broke free from two bolts securing it to the underside of the cab. The cab began to shudder and shake, and the plaintiff struck her head and shoulder against the walls of the cab. The chain then fell to the bottom of the elevator shaft with a loud crash,

which frightened the plaintiff. Upon hearing the crash, the plaintiff, fearing for her safety, reversed the direction of the elevator as it was approaching the twelfth floor. She directed the elevator to the nearest floor, the eleventh, where she jumped from the cab sustaining additional injuries. At the time the plaintiff received her injuries, the defendant had a longstanding exclusive contract with the building owner to maintain and inspect the elevator and its component parts. The elevator was installed by the defendant approximately sixty-one years before the accident. William Hendry, the defendant's district maintenance supervisor, testified that the accident was caused by the compensation chain's becoming hooked on a rail bracket in the elevator shaft due to excessive sway of the chain. Hendry further testified that the elevators were routinely inspected, but that neither inspection nor testing of the compensation chain was part of that routine inspection. The bolts that held the compensation chain to the underside of the elevator cab were never changed, and no one other than the defendant company touched the compensation chain or the bolts.

"On cross-examination, Hendry testified that the normal sway of a compensation chain is approximately one to two inches, and in order for the chain to get hooked on a rail bracket it must sway at least eighteen inches. He further testified that for the chain to sway eighteen inches there must be some misoperation of the elevator, such as rapid reversals of direction. He had never before seen a compensation chain pulled free of an elevator cab in his thirty-seven years of employment by the defendant. He further stated that on one occasion he had seen the plaintiff make rapid reversals of direction of the elevator.

"The plaintiff, however, testified that her ascension from the first to the twelfth floor was routine until she approached the twelfth floor, and that the cab began

to shake and sway before she reversed its direction to the eleventh floor. She further testified that the crash of the compensation chain as it hit the bottom of the elevator shaft occurred before she reversed the direction of the cab." *Giles* v. *New Haven,* 30 Conn. App. 148, 152–53, 619 A.2d 476 (1993).

The plaintiff argued in the Appellate Court that she had offered sufficient evidence at trial from which the jury reasonably could have inferred that the defendant had been negligent in failing to inspect, maintain and repair the compensation chain. In so arguing, the plaintiff presented no direct evidence of the elevator malfunctioning, nor of any defect in the compensation chain. In support of her claim that the question of the defendant's negligence be submitted to the jury, she relied, however, on the doctrine of res ipsa loquitur which, when properly invoked, allows the jury to infer negligence based on the circumstances of the incident even though no direct evidence of negligence has been introduced. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* 206 Conn. 439, 441–42, 538 A.2d 690 (1988). This "rule of common sense . . . is but a specific application of the general principle that negligence can be proved by circumstantial evidence." (Internal quotation marks omitted.) Id., 442. The doctrine of res ipsa loquitur applies when three conditions are satisfied: " '(1) [t]he situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user[;] (2) [b]oth inspection and user must have been at the time of the injury in the control of the party charged with neglect[;] (3) [t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.' *Schurgast* v. *Schumann,* [156 Conn. 471, 479, 242 A.2d 695 (1968)]; *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 320, 175 A. 679 (1934); *Stebel* v. *Connecti-*

*cut Co.,* [90 Conn. 24, 26, 96 A. 171 (1915)]; 4 F. Harper, F. James & O. Gray, [Torts (2d Ed. 1986) §§ 19.5 through 19.12]. Whether the doctrine applies in a given case is a question of law for the court." *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 443.

Before the Appellate Court the parties agreed that the first condition had been met: the accident would not have occurred unless someone had been negligent. *Giles* v. *New Haven,* supra, 154. The parties were, however, in disagreement about whether the plaintiff had made a case for the jury with respect to the second and third conditions of the doctrine, namely, control of the elevator by the defendant and the absence of responsibility for the accident on the part of the plaintiff. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra.

The defendant challenges the application of the res ipsa loquitur doctrine to this case because in its view the plaintiff failed to demonstrate that the defendant had exclusive control over the elevator. Specifically, the defendant argues that because the plaintiff operated the elevator and controlled its movement and its chain's sway, she could not benefit from the doctrine notwithstanding the defendant's own duty to maintain and inspect the elevator and to warn of any dangerous propensity. We disagree and take this opportunity to clarify some of the confusion in our earlier cases regarding the present scope of the doctrine of res ipsa loquitur.

At the outset, we note that the plaintiff's evidence of the defendant's responsibility need not be irrefutable; rather, the plaintiff need only establish enough evidence that, if credited, presents the defendant's negligence as the most plausible explanation. *Sedlitsky* v. *Pareso,* 400 Pa. Super. 1, 5, 582 A.2d 1314 (1990); 2 Restatement (Second), Torts § 328 D, comment (e). In other words, " '[t]he plaintiff need not . . . con-

clusively exclude all other possible explanations, and so prove his [or her] case beyond a reasonable doubt. . . . It is enough that the facts proved reasonably permit the conclusion that [the defendant's] negligence is the more probable explanation.' " 2 Restatement (Second), Torts § 328D, comment (e). Whether res ipsa loquitur applies depends upon whether the defendant's negligence was the most plausible explanation for the plaintiff's injury; the doctrine does not apply if there are other reasonable explanations for the plaintiff's accidental injury. *Sedlitsky* v. *Pareso,* supra.

To avail herself of the inference afforded by the res ipsa loquitur doctrine, the plaintiff must demonstrate that the defendant was responsible for the specific instrumentality that caused the event. *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 443. Proof of the defendant's control over the instrumentality demonstrates its responsibility in satisfaction of the second condition of the res ipsa loquitur doctrine. Although the term "exclusive" control does not explicitly appear in the original articulation of that condition, the term has found its way into this court's previous discussions of the issue. Id., 445, and cases cited therein dating back to 1915. Nevertheless, in describing the extent of the defendant's control of the use of the instrumentality, we have never held that any use whatsoever of the instrumentality by the plaintiff would automatically preclude application of res ipsa loquitur. *Bluett* v. *Eli Skating Club,* 133 Conn. 99, 103, 48 A.2d 557 (1946). So restrictive an interpretation would substantially undermine the efficacy of the doctrine. Rather, our previous discussions of use were meant to reflect the idea of *management* and *control,* factors that help to limit the application of the res ipsa loquitur doctrine to those situations in which the defendant's negligence was more probably than not the cause of the plaintiff's injuries. *Schurgast* v. *Schumann,* supra, 479. The plain-

tiff's actual use of the instrument, therefore, does not, in and of itself, bar application of the doctrine. See *Killian* v. *Logan,* 115 Conn. 437, 440–42, 162 A. 30 (1932) (doctrine applied to action for injuries caused by negligent maintenance of fire escape used by plaintiff when injury occurred); *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 641–46, 120 A. 300 (1923) (doctrine applicable where plaintiff and her child were injured while riding amusement park ride despite fact that plaintiff was using ride at time of her injuries and could have been engaging in conduct which affected steel cable).

The growing trend in res ipsa loquitur jurisprudence is not to apply the "control" condition in such a way that renders it "a fixed, mechanical and rigid rule. 'Control,' if it is not to be pernicious and misleading, must be a very flexible term. It may be enough that the defendant has the right or power of control, and the opportunity to exercise it . . . . It is enough that the defendant is under a duty which he cannot delegate to another . . . . There is now quite general agreement that the fact that the plaintiff is . . . using an appliance, which the defendant has manufactured or maintained, will not prevent the application of res ipsa loquitur when the evidence reasonably eliminates other explanations than the defendant's negligence." W. Prosser & W. Keeton, supra, § 39, p. 250.

"The point of requiring control by the defendant is, as indicated by Prosser, to provide the basis for an inference that whatever negligence was involved may properly be charged to the defendant. *Hoven* v. *Kelble,* 79 Wis. 2d 444, 454, 256 N.W.2d 379 (1977); see W. Prosser, [Torts (4th Ed. 1971)] § 39, pp. 219–21. [Thus, f]or the control condition of the res ipsa loquitur doctrine to apply, the plaintiff must adduce evidence from which the court, as a matter of law, can properly determine that a jury could reasonably draw an infer-

ence that it is more probable than not that the person whose negligence caused the injury was the defendant and not some other party or agency." (Internal quotation marks omitted.) *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 446.

In many jurisdictions, courts now deemphasize the role of exclusive control as a condition of res ipsa loquitur, even though their earlier decisions included such a requirement. See, e.g., *Tompkins* v. *Northwestern Union Trust Co.,* 198 Mont. 170, 177, 645 P.2d 402 (1982) (proof of exclusive control merely assists the plaintiff in establishing probable cause in a res ipsa loquitur case; concurrent causes may exist and yet not foreclose reliance on the doctrine); *Pattle* v. *Wildish Construction Co.,* 270 Or. 792, 797, 529 P.2d 924 (1974) (requirement of exclusive control does not mean that defendant's control must have been exclusive in terms of physical possession, but only that " 'it must appear that the negligence of which the thing speaks is probably that of defendant and not of another' "). "Exclusive control is merely one way of proving a defendant's responsibility. 'He may be responsible, and the inference may be drawn against him, where he shares the control with another.' Restatement (Second) of Torts, § 328D, comment g. Thus, the inference may be drawn jointly against the owner of an elevator and the elevator company which maintains the same. *Johnson* v. *Otis Elevator Co.,* 225 Pa. Super. 500, 502, 311 A.2d 656, 657 (1973). See also: *Carney* v. *Otis Elevator Co.,* [370 Pa. Super. 394, 536 A.2d 804 (1988)]; *Williams* v. *Eastern Elevator Co.,* 254 Pa. Super. 393, 386 A.2d 7 (1978)." *Williams* v. *Otis Elevator Co.,* 409 Pa. Super. 486, 493, 598 A.2d 302 (1991). If the jury could reasonably find that the defendant's control was sufficient to warrant an inference that the defendant was more likely responsible for the incident than someone else, even in the absence of proof of absolute exclusivity and

control over the instrumentality by the defendant, the trial court must allow the jury to draw that inference. *Wilson* v. *Honeywell, Inc.,* 409 Mass. 803, 807, 569 N.E.2d 1011 (1991).

The Restatement (Second) of Torts also rejects the requirement of exclusive control. A party's negligence may be inferred when "other responsible causes . . . are sufficiently eliminated by the evidence . . . ." 2 Restatement (Second), Torts § 328 (D) (1) (b). While exclusivity may eliminate other causes, the critical inquiry is not whether the defendant's control was exclusive, but whether that defendant was responsible for the injury. Id., § 328 (D), comment (g). "[T]here is no necessity for a plaintiff to eliminate all other possible causes of the accident. All that is required is that the plaintiff produce sufficient evidence from which a reasonable [person] could say that, on the whole, it was more likely than not that there was negligence on the part of the defendant. . . . [T]he possibility of other causes does not have to be eliminated completely, but their likelihood must be so reduced that the jury can reasonably find that the negligence, if any, lies at the defendant's door." *Parrillo* v. *Giroux Co.,* 426 A.2d 1313, 1319 (R.I. 1981); W. Prosser, supra, § 39; 2 F. Harper & F. James, Torts (1956) § 19.7.[2]

---

[2] Numerous courts have disavowed any requirement that the plaintiff eliminate completely the possibility of other causes for the injuries sustained. See, e.g., *Zimmer* v. *Celebrities, Inc.,* 44 Colo. App. 515, 518, 615 P.2d 76 (1980); *Quin* v. *George Washington University,* 407 A.2d 580, 584 (D.C. 1979); *Bias* v. *Montgomery Elevator Co.,* 216 Kan. 341, 344, 532 P.2d 1053 (1975); *Harford* v. *Lloyd E. Mitchell, Inc.,* 269 Md. 64, 71, 304 A.2d 234 (1973); *Walsh* v. *Phillips,* 399 S.W.2d 123, 128 (Mo. 1966); *American Elevator Co.* v. *Briscoe,* 93 Nev. 665, 669, 572 P.2d 534 (1977); *Dillon* v. *William S. Scull Co.,* 164 Pa. Super. 365, 369, 64 A.2d 525 (1949); *Mobil Chemical Co.* v. *Bell,* 517 S.W.2d 245, 251 (Tex. 1974); *Joly* v. *Coca-Cola Bottling Co.,* 115 Vt. 174, 180, 55 A.2d 181 (1947); *Hoven* v. *Kelble,* 79 Wis. 2d 444, 451, 256 N.W.2d 379 (1977). Other courts have held that there is nothing in the doctrine's rationale that makes the defendant's physical control an essential element. *Jackson* v. *H. H. Robertson Co.,* 118 Ariz. 29, 32, 574

In this case, the parties agree that the defendant was in control of the maintenance and repair of the elevator and its parts, and that the operation of the elevator by the plaintiff was tantamount to its use. The defendant, however, seeks to distinguish the components of the elevator from their mechanical function by arguing that, although it controlled the elevator chain, it did not control the chain's sway. We reject such a view of control. Although by operating the elevator the plaintiff may have diminished the *exclusivity* of the defendant's control, a jury could find that her conduct did not strip the defendant of control or responsibility for the chain and its condition, which resulted in the excessive sway. We also reject the defendant's suggestion that someone else could have operated the elevator in such a fashion as to cause the excessive sway. Such a suggestion amounts to speculation that the plaintiff need not dispositively refute. See *Sedlitsky* v. *Pareso,* supra, 5.

Hendry, the defendant's maintenance supervisor, testified that the compensation chain was located under the cab and, consequently, was inaccessible to an operator inside the cab. He testified that the bolts and brackets to which the chain was fastened—which had been broken—likewise were located under the cab and could not have been touched by an elevator operator inside the cab. He added that the defendant's mechanic had not been trained or instructed to inspect the compensation chain to determine whether it had been loose or swayed so that it might catch on the rail brackets. Hendry further testified that no part of the compen-

P.2d 822 (1978); *Metz* v. *Central Illinois Electric & Gas Co.,* 32 Ill. 2d 446, 450, 207 N.E.2d 305 (1965); *Oak Leaf Country Club, Inc.* v. *Wilson,* 257 N.W.2d 739, 744 (Iowa 1977); *Mets* v. *Granrud,* 186 Mont. 265, 269, 606 P.2d 1384 (1980); *Gierach* v. *Snap-On Tools Corp.,* 79 Wis. 2d 53, 56, 255 N.W.2d 465 (1977).

sation mechanism, including the compensation chain and the U-bolts that held it in place, had been repaired or replaced for several years. He testified that his inspection after the incident revealed that the U-bolts had been broken, the counterweight bracket had been pulled out of place and the traveling cable had been broken.

Although Hendry explained that there was no reason to inspect the compensation chain and that he believed the accident had been caused by multiple rapid direction reversals, the plaintiff was not required to prove the absence of such reversals in order to avail herself of the res ipsa loquitur inference. The plaintiff testified that she had been using the elevator in a normal manner on the day of the accident and the trial court was required to view that testimony in a light most favorable to the plaintiff. *Petyan* v. *Ellis,* supra, 244. As in this case, "[o]nce a plaintiff has presented sufficient evidence to bring himself [or herself] within the operation of the doctrine, the burden of going forward with evidence to explain the accident is cast upon the defendant . . . ." *Bituminous Fire & Marine Ins. Co.* v. *Culligan Fyrprotexion, Inc.,* 437 N.E.2d 1360, 1365 (Ind. App. 1982). The burden of proof, however, does not shift, and the plaintiff must prove her case by a preponderance of the evidence. *Ryan* v. *George L. Lilley Co.,* 121 Conn. 26, 30, 183 A. 2 (1936). Accordingly, the defendant is free to rebut the inference provided by the doctrine; nevertheless, "even though the defendant comes forward with an explanation of the accident, the inference of negligence does not disappear from the case, but remains and is placed upon the scales to be weighed by the trier of facts with any and all explanations and other evidence."[3] *Bituminous Fire*

[3] The defendant argues that because Hendry's testimony indicated that no amount of maintenance could have prevented the accident, application of the res ipsa loquitur doctrine would have been improper. This argument

*& Marine Ins. Co.* v. *Culligan Fyrprotexion, Inc.,* supra. We agree with the Appellate Court that the evidence established an evidentiary basis from which the jury could find that the plaintiff's injuries resulted from the defendant's negligence.

Finally, with regard to the third condition of the res ipsa loquitur doctrine, we recently suggested in dictum that "in a jurisdiction that utilizes the doctrine of comparative negligence, such as Connecticut, the emerging rule is that any negligence by the plaintiff should not bar liability but should merely reduce damages. . . . Commentators have suggested that the doctrine of res ipsa loquitur should survive under Connecticut's comparative negligence law. See G. Saden, 'Comparative Negligence Adopted in Connecticut,' 47 Conn. B.J. 416, 426 (1973); F. James, 'Connecticut's Comparative Negligence Statute: An Analysis of Some Problems,' 6 Conn. L. Rev. 207, 215 (1973–74)." *Malvicini* v. *Stratfield Motor Hotel, Inc.,* supra, 444–45. We now consider this dictum directly and specifically adopt it.

Negligence, if any, by a plaintiff is not a part of the "control" element of the doctrine. The purpose of comparative negligence is to ameliorate the harshness of the complete bar to liability resulting from the common law defense of contributory negligence. W. Prosser, supra, § 67. This change in policy was accomplished by mandating a comparison by the fact finder of the relative degrees of negligence of the plaintiff and the defendant. General Statutes § 52-572h (6) provides that "contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury . . . if the negligence

---

reflects a misunderstanding of the purpose of the doctrine, which is to relieve the plaintiff of the burden of proving a specific act of negligence. The jury is as free to accept or reject the defendant's defense as it is to draw or not draw the permissive inference afforded by the doctrine.

was not greater than the combined negligence of the person or persons against whom recovery is sought . . . ." The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based upon the degree of the plaintiff's own negligence. *Gomeau* v. *Forrest,* 176 Conn. 523, 525, 409 A.2d 1006 (1979); see W. Prosser, supra, § 67. We would contravene this manifest legislative purpose if we were to continue to require a plaintiff to be free from contributory negligence as an element of the res ipsa loquitur doctrine. Because of the advent of comparative negligence, res ipsa loquitur now applies even if the plaintiff's fault contributed to the injury. *Cramer* v. *Mengerhausen,* 275 Or. 223, 229, 550 P.2d 740 (1976).

Insofar as the third condition of res ipsa loquitur relates to contributory negligence, the enactment of § 52-572h requires a modification. We conclude that whenever a court can reasonably find that the event is one that ordinarily would not have occurred in the absence of someone's negligence, and that the defendant's inferred negligence was more probably than not a cause of the injury, the doctrine of res ipsa loquitur applies even though the plaintiff's negligence may also have contributed to the injury. If a trial court determines that the doctrine of res ipsa loquitur is applicable, it should thereafter instruct the jury to compare the negligence of the plaintiff, if any, with that of the defendant to decide what percentages to attribute to each party consistent with the comparative negligence statute.[4]

---

[4] At least seven other comparative fault jurisdictions agree with this position. See *Emerick* v. *Raleigh Hills Hospital,* 133 Cal. App. 3d 575, 184 Cal. Rptr. 92 (1982); *Montgomery Elevator Co.* v. *Gordon,* 619 P.2d 66 (Colo.

The Appellate Court properly upheld the plaintiff's claim that the trial court should not have granted the defendant's motion for a directed verdict. Pursuant to the doctrine of res ipsa loquitur as we have refined its conditions in this opinion, the plaintiff was entitled to have a jury consider her claim that the defendant's negligence was the cause of her personal injuries.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

1980); *Dyback* v. *Weber*, 114 Ill. 2d 232, 500 N.E.2d 8 (1986); *Tipton* v. *Texaco, Inc.*, 103 N.M. 689, 712 P.2d 1351 (1985); *Watzig* v. *Tobin*, 292 Or. 645, 642 P.2d 651 (1982); *Cyr* v. *Green Mountain Power Corp.*, 145 Vt. 231, 485 A.2d 1265 (1984); *Turtenwald* v. *Aetna Casualty & Surety Co.*, 55 Wis. 2d 659, 201 N.W.2d 1 (1972).