ROSALIE ZANONI *v.* PAUL A. HUDON, CONSERVATOR (ESTATE OF HELEN A. BENNY), ET AL.
(AC 14012)

O'Connell, C. J., and Lavery and Spear, Js.

Argued December 11, 1997—officially released March 10, 1998

*Michael A. D'Amico*, for the appellant (plaintiff).

*Karen L. Murdoch*, with whom was *Kevin Hawkins*, certified legal intern, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Rosalie Zanoni, appeals from the trial court's granting of the defendant conservator's motions for directed verdict.[1] The plaintiff's first

---

[1] The defendant, Paul Hudon, filed motions for directed verdict individually and as conservator of the estate of Helen A. Benny.

claims on appeal are that the trial court improperly shielded the defendant from liability for breach of contract and for unjust enrichment and conversion. The court determined that because the sale of real estate between the plaintiff and defendant conservator had been approved by the Probate Court and because the deposit of $16,500, made pursuant to that contract, had previously been listed on the conservator's final account, which was allowed and approved by the Probate Court, the defendant was acting as agent for the Probate Court and, therefore, was not liable individually.

The plaintiff raises as a final claim that the trial court improperly found that it lacked subject matter jurisdiction over the plaintiff's breach of contract, unjust enrichment and conversion claims against the defendant.[2]

The trial court reasonably could have found the following facts. In February, 1989, the defendant was appointed conservator of the estate of Helen A. Benny by the Probate Court for the district of Newington. On June 2, 1989, the plaintiff, as buyer, and the defendant, as conservator, entered into a sales and purchase agreement for real property owned by Benny and located at 21 Brightwater Road in Old Lyme. The sale and purchase agreement for this property stated that the plaintiff was to pay $16,500, as a deposit for the purchase price of $165,000 and that the down payment

---

[2] The plaintiff's appeal originally contained a separate issue stating: "Did the trial court err in entering judgment granting defendant's, Karen Renzulli Lynch, Successor Administrator d.b.n.c.t.a. of the Estate of Helen A. Benny, motion for directed verdict dated April 26, 1994? Specifically, did the trial court lack subject matter jurisdiction to entertain plaintiff's request for declaratory relief because the deposit of $16,500 had previously been listed on the conservator's final account allowed and approved by the Probate Court?" On November 7, 1996, the Probate Court declared that the estate was insolvent. On March 6, 1997, the motion to abate under General Statutes § 45a-382, filed by the administrator of the estate, was granted, and the claim against the administrator was dismissed.

would be forfeited as liquidated damages in the event that the plaintiff did not pay the balance of the purchase price at closing. The contract also stated that time was of the essence and specified a closing date of no later than July 17, 1989. The sale of the property was authorized by the Probate Court. The plaintiff made the $16,500 down payment, but failed to tender the balance of the purchase price on the closing date or at any time before the death of Benny on August 7, 1989. The plaintiff claimed that the defendant could not deliver a marketable title, which the defendant disputes. Benny's death terminated the defendant's conservatorship.

On September 12, 1989, the defendant filed his final account as conservator with the Probate Court listing the $16,500 as an asset of the estate. On September 25, 1989, the plaintiff was appointed executrix of the estate of Helen Benny pursuant to Benny's will. On November 1, 1989, the Probate Court approved the defendant's final account as conservator. The plaintiff, as executrix, but not individually, appealed to the Superior Court from the Probate Court's approval of the final account. The plaintiff's appeal was dismissed on January 28, 1991, for her failure to appear through counsel. On March 27, 1991, the plaintiff was removed as executrix and was replaced. On August 5, 1991, the defendant transferred the $16,500 to the successor administrator from his client's funds account.

The plaintiff brought suit against the defendant as conservator and individually in six counts seeking money damages for unjust enrichment, conversion and breach of contract. A seventh count was against the administrator of the estate requesting declaratory relief. The defendant filed a counterclaim for abuse of process. The case was tried to a jury. On April 24, 1994, the trial court granted the defendant's motions for directed verdict as to the complaint and the plaintiff's motion for directed verdict as to the defendant's counterclaim.

The court issued a memorandum of decision on August 25, 1994, and a supplemental memorandum of decision on September 13, 1994. On November 7, 1996, the Probate Court declared that the estate of Helen A. Benny was insolvent. This appeal followed.

I

The plaintiff's underlying claim is that the trial court improperly concluded that the defendant could not be sued individually or as conservator and, therefore, the court should not have granted the defendant's motion for directed verdict.

" 'The standard of review of directed verdicts is well settled. A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion. *Petyan* v. *Ellis*, 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Golembeski* v. *Metichewan Grange No. 190*, 20 Conn. App. 699, 701, 569 A.2d 1157 [cert. denied, 214 Conn. 809, 573 A.2d 320] (1990).' *Merola* v. *Burns*, 21 Conn. App. 633, 636, 575 A.2d 1025 (1990). In reviewing the trial court's action in directing a verdict for [the defendants], we must consider the evidence in the light most favorable to the plaintiff. *Petyan* v. *Ellis*, supra [244]; *Merola* v. *Burns*, supra [636]." *Berry* v. *Loiseau*, 223 Conn. 786, 819–20, 614 A.2d 414 (1992).

As to the plaintiff's claim of breach of contract against the defendant individually, the trial court concluded that because the Probate Court approved the contract of sale, the defendant was acting as an agent of the Probate Court and could not be held individually liable. We agree.

"A conservator has an implied power to enter into contracts on behalf of his ward's estate where such contracts involve the exercise of the express or implied powers which are granted to the conservator by statute.

. . . If such a contract has been previously authorized by the Probate Court, or is subsequently approved by that court, the ward's estate will be bound thereto. . . . The authorization or approval by the Probate Court, however, is essential, and without it the ward's estate is not liable." (Citations omitted.) *Elmendorf* v. *Poprocki*, 155 Conn. 115, 118, 230 A.2d 1 (1967). "The Probate Court is under an affirmative duty to protect the assets of an incompetent's estate. *Marshall* v. *Kleinman*, 186 Conn. 67, 69, 438 A.2d 1199 (1982). The court, and *not the conservator*, is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court." (Emphasis in original; internal quotation marks omitted.) *Marcus' Appeal from Probate*, 199 Conn. 524, 529, 509 A.2d 1 (1986).

"A conservator is a fiduciary and acts 'at his peril and on his own personal responsibility' unless and until his actions in the management of the ward's estate are approved by the Probate Court. *Elmendorf* v. *Poprocki*, [supra, 155 Conn. 119]; *Marshall* v. *Kleinman*, [supra, 186 Conn. 69–70]." *Marcus' Appeal from Probate*, supra, 199 Conn. 533.

The plaintiff argues that the defendant remains individually liable and cites to *Mitchell* v. *Hazen*, 4 Conn. 495, 514–15 (1823), as the decision closest to this case. In *Mitchell*, it was held that where the Probate Court approved the sale of certain real estate, but not specifically with a warranty of title, the administrator of the estate was personally liable for a breach of this covenant because the warranty of title was beyond the power authorized by the Probate Court. It is the plaintiff's argument that in this case, because the Probate Court did not authorize a breach of contract, the defendant has acted beyond the power approved by the Probate Court and at his own peril by not returning the $16,500 deposit. We disagree.

In this case, the plaintiff and the defendant, as conservator, entered into a written contract for the purchase of real estate. The Probate Court approved the contract, which included language concerning the deposit and its potential forfeiture. Thus, the defendant was not individually liable for actions taken in accordance with the approved terms of the contract. He was merely acting as agent for the Probate Court. "Upon the facts found we have the case of an agent within the scope of his authority contracting with a third party for a known principal, and no fact in the finding shows that the contract was with the agent personally. Under such circumstances, the liability is upon the principal and the agent is not liable. . . . An authorized agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was incurred, is not personally liable to the other contracting party." (Citations omitted; internal quotation marks omitted.) *Whitlock's, Inc.* v. *Manley*, 123 Conn. 434, 437, 196 A. 149 (1937).

## II

The plaintiff also brought claims of unjust enrichment and conversion against the defendant as an individual and as conservator, and on appeal claims that the trial court improperly ruled in the defendant's favor because the sale had been approved by the Probate Court and because the deposit of $16,500 had been approved as an asset of the estate.

"Conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Polivy* v. *Air One, Inc.*, 46 Conn. App. 573, 577, 700 A.2d 71, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997). To establish a prima facie case of conversion, the plaintiff had to demonstrate (1) that the $16,500 deposit given to the defendant conservator belonged to the

plaintiff, (2) that the defendant deprived the plaintiff of her funds for an indefinite period of time, (3) that the defendant's conduct was unauthorized and (4) that the defendant's conduct harmed the plaintiff. See *Discover Leasing, Inc.* v. *Murphy,* 33 Conn. App. 303, 309, 635 A.2d 843 (1993).

" 'Unjust enrichment is a very broad and flexible equitable doctrine . . . which has as its basis that it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. . . . Its three basic requirements are (1) that the [defendant was] benefited, (2) that the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment.' " (Citations omitted.) *Eastern Metal Products, Inc.* v. *Deperry,* 44 Conn. App. 60, 61–62, 686 A.2d 1003 (1997).

In resolving these claims, the trial court stated that because "the defendant was acting as an agent of the Probate Court in entering into this contract and in retaining the down payment after he determined the plaintiff had breached the contract, it is difficult to understand how it could be said [that] the defendant could be held for conversion or how it could be found that he personally benefited from the retention of the money. He retained the funds in a trustees' account and turned them over to the estate where in a final accounting the Probate Court determined the moneys were an asset of the estate."

Upon our review of the facts in this case, we agree with the trial court's determination that the defendant did nothing wrong. As conservator, the defendant was granted approval to sell the property in question to the plaintiff with specified terms. Upon his determination that the plaintiff breached the contract, the defendant

retained the $16,500 as specified in the contract. Further, there is no evidence that the defendant benefited either as an individual or as conservator from the retention of these funds in a trustee account. Upon the death of his ward and the termination of the conservatorship, the defendant properly included the money as part of the final accounting, which the Probate Court subsequently approved as an asset of the estate.[3]

Any claim for the deposit money must be brought against the estate. See General Statutes §§ 45a-353 through 45a-365. The fact that the estate is now insolvent does not mean that the plaintiff can go after the defendant individually or as conservator. Again, the defendant was only an agent acting for the Probate Court who ceased having any power upon the death of his ward. At that time, the only action the defendant could properly take was to submit his final accounting for the approval of the Probate Court, which he did. The trial court correctly concluded that the defendant could not be held liable as an individual or as a conservator for any of the claims raised by the plaintiff and properly granted the defendant's motions for directed verdict.

Because the trial court properly adjudicated the plaintiff's action against the defendant, the plaintiff's final claim on appeal is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] General Statutes § 45a-660 (a) (3) provides: "If any ward having a conservator dies, his or her property other than property which has accrued from the sale of his or her real property shall be delivered to his or her executor or administrator. The unexpended proceeds of his or her real property sold as aforesaid shall go into the hands of the executor or administrator, to be distributed as such real property would have been."