[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 5 and 6, 1998, the court heard evidence at a court trial as to the parties' claims and counterclaims. The plaintiff, William Zenon, sues the defendant, Robert Yeagher for breach of a promissory note; defendants, Robert Yeagher and R.E. Yeagher Management Corp. (Corporation), for breach of a written lease; and defendants, Robert and Marianne Yeagher for fraudulent conveyance of real estate. Defendants Robert Yeagher and the Corporation counterclaim against the plaintiff for a violation of the Massachusetts unfair trade practices act, codified in M.G.L. c.93a; for fraudulent misrepresentation; negligent misrepresentation; unjust enrichment; conversion; and breach of contract.
The court finds the following facts. The plaintiff, a Massachusetts real estate broker, owned property located at 11 Worcester Road, Webster, Mass., formerly known as, 43 Worcester Road, upon which property is a restaurant building. The plaintiff leased these premises to a former tenant who fell behind in rent payments prompting the plaintiff to plan eviction. The plaintiff advertised for prospective tenants, and Robert Yeagher responded. CT Page 8288 Yeagher and the plaintiff met at the site and discussed a possible lease or purchase arrangement once the present tenant vacated. Eventually, these parties agreed that Yeagher's corporation would lease the property with an option to buy and operate a pub-style facility on the premises.
It is essential to a pub that alcoholic beverages be served there. The plaintiff informed Yeagher that he held the liquor license for the restaurant and would transfer the license to the corporation after the lease agreement was signed. Unknown to Yeagher, the liquor license was held by the former tenant and not the plaintiff at that time.
A written lease agreement was entered into between the plaintiff and the corporation, with Yeagher personally guaranteeing the lease, on May 19, 1994. Clause 37.2 of the lease agreement provides that unless the liquor license was transferred to the corporation within three months, i.e., by August 20, 1994, the lease would terminate and the $10,000 security deposit would be returned in full. The plaintiff failed to transfer the liquor license by that date.
Absent possession of the liquor license, Yeagher refused to open the pub, although engaged in substantial steps to prepare for operation, such as making structural repairs and procuring additional equipment. During August 1991, the plaintiff obtained the license from the former tenant's bankruptcy estate at an auction conducted by the bankruptcy trustee. Yeagher applied for approval of the license transfer, and, in October 1994, the local authority granted approval. The state liquor authority, the Massachusetts alcoholic beverage control commission, disapproved the transfer, however, because Yeagher and the corporation were deemed to be financially unsuitable. Yeagher reapplied sometime afterwards, but this second application was rejected by the local authority.
In order to sidestep this obstacle, the plaintiff and Yeagher engaged in an unlawful ruse to deceive the liquor control authorities. The plaintiff pretended that it was he who owned the pub instead of Yeagher's corporation, and Yeagher pretended that he was merely a manager rather than the principal shareholder of the corporation which owned the business. The parties went so far as to create a dummy checking account in the plaintiff's name to be used when necessary t maintain the false appearance of the plaintiff's ownership of the business. CT Page 8289
The corporation paid no rent to the plaintiff after August 20, 1994, and Yeagher consulted with his attorney to draft a new lease agreement. Despite discussions between Yeagher's counsel and the plaintiff, no new written lease agreement was drawn. Instead, the parties continued to attempt to resolve the liquor license transfer problem until the second disapproval of that transfer.
By May 1995, the plaintiff became frustrated with the situation and required Yeagher to execute a promissory note, payable to the plaintiff, in an amount of $16,280, in order for Yeagher to continue to have the option to open a pub on the premises utilizing the deception described above. Because Yeagher still wished to operate the pub, he signed the note on May 22, 1995. Yeagher paid the plaintiff $9,440 on the note but not the remainder due under its terms. Shortly thereafter, the pub opened.
Within a few months, the corporation and Yeagher began to miss rental payments which were payable at $900 per week. On August 6, 1995, the plaintiff locked Yeagher out and denied him access to the building. About three weeks later, a fire ravaged the building damaging its structure and contents. The $10,000 security deposit has been retained by the plaintiff.
The parties have both argued and the court agrees that Massachusetts substantive law governs the parties' claims except for the allegation of fraudulent transfer which pertains Connecticut realty.
 I
As to the duration of the written lease, dated May 19, 1994, the court holds that that agreement automatically terminated by virtue of the terms of the lease, on August 20, 1994, when transfer of the liquor license to the corporation failed to materialize. The plaintiff contends that clause 37.2 was merely a condition subsequent which was waived when no notice of termination or other action by the defendants was taken to enforce termination. The defendants argue that, under Massachusetts law, this clause is a limitation which ends the lease without the necessity of notice or other confirmatory action.
CT Page 8290
When the language of a lease declares that the lease shall terminate upon the occurrence of a contingency without any reentry or other act to be done, the provision is a limitation rather than a condition subsequent. Markey v. Smith.16 N.E.2d 20, 23 (Ma.Sup.Jud.Ct, 1938). No further action, such as notice, is required to bring the lease to an end. Id. Clause 37.2 unequivocally states that upon failure to transfer the liquor license to the corporation within three months "this lease Agreement shall terminate and come to end." The agreement was drafted by the plaintiff and contains no notice or other requirement before termination under clause 37.2. In contrast, other provisions of the agreement contained notice before termination language, e.g. clause 16. The intent of the parties as evidenced by the unambiguous wording of the agreement was that nontransfer of the liquor license within three months ends the lease.
The court also finds that the defendants never waived this termination clause. The plaintiff knew the defendants sought legal advice regarding the creation of a new agreement and refund of the security deposit. Significantly, the defendants ceased paying rent until the pub opened for business the following year. Consequently, the lease expired on August 20, 1994.
All of the plaintiffs' claims contained in the second count of the amended complaint allege violations of the lease agreement occurring after August 20, 1994. Because the lease no longer existed at the time of these purported violations, the plaintiff's claims under the lease must fail. Judgment enters for the defendants as to this count.
 II
As to the first count of the amended complaint, alleging nonpayment of the promissory note of May 22, 1995, the court must address the preliminary issue of the enforceability of that note. The court has found that the plaintiff and Yeagher conspired to defraud the liquor control authorities after Yeagher's second attempt for approval of the license transfer failed. Operation of the pub by means of the deceit described above rendered this enterprise unlawful under Massachusetts liquor laws. The question arises as to whether a coconspirator can expect a court to enforce agreements which are made to facilitate, foster, or support patently illegal activity. The court holds that, under Massachusetts law, such agreements are unenforceable. CT Page 8291
While no Connecticut appellate level tribunal has adopted the approach of 2 Restatement (Contracts) § 178ff, which deals with this and related issues, see Southport Manor Conv. Ctr.v. Kundrath, Superior Court, Fairfield J.D., d.n. CV91-284958 (November 2, 1994), the Appellate Court of Massachusetts has employed the Restatement position. Hastings Assoc. v.Local 369 Building Fund, 42 Mass. App. 162, 177 (1997).
Section 181 of 2 Restatement (Contracts) propounds that if a party is prohibited from doing an act because of noncompliance with licensing requirements, a promise in consideration of doing the act is unenforceable on public policy grounds if (a) the requirement has a regulatory purpose and (b) the enforcement of the promise is clearly outweighed by the public policy behind the requirement. Section 182 further elucidates that even where substantial performance has occurred enforcement of the agreement is precluded if both parties acted to advance the improper use.
The facts in the Hastings case, supra, are remarkably similar to these in the present case. In that case, the defendant ran a function hall whose primary source of revenue was from the sale of alcoholic beverages. The defendant possessed a valid liquor license permitting the sale of alcoholic drinks. The plaintiff was a corporation formed by two employees of the defendant who decided to purchase the business. A lease agreement was struck to accomplish the takeover. The plaintiff unsuccessfully sought a liquor license. The parties agreed to continue with their agreement despite the denial of license by the liquor authorities. The plaintiff simply operated under the license issued to the defendant for a period of years. When negotiations hit a snag with respect to lease renewal, the plaintiff sued the defendant claiming damages arising from a breach of the lease.
The Massachusetts Appellate Court refused to enforce the lease even though neither party had posed this issue until the appeal. That Court held that a liquor license is a special privilege I subject to public regulation and control, Id., 173 and 174; that the untoward use of the license was not incidental and was inseparable from the use of the hall and permeated the relationship between the parties. Id., 176. The Court quoted 6 Williston on Contracts, § 12.4, approvingly, where that commentator states "one who has participated in a violation of law will not be allowed to assert in court any right based upon CT Page 8292 or directly connected with the illegal transaction". Id.
The appellate Court recognized that, while insubstantial violations of licensing statutes might not render an agreement unenforceable, where the parties effectively substituted their own judgment for that of the licensing authority a substantial contravention of public policy exists warranting invalidation of the agreement. Id., 177 and 178. The Court rejected the plaintiff's contention that unenforceability would amount to forfeiture and create a financial hardship by stating, "[a]lthough we are cognizant of the `heavy forfeiture' our decision works upon the plaintiff . . . and that such a harsh result favors an undeserving and equally culpable defendant, we nevertheless conclude that the range of consideration weighs in favor of this result on grounds of the strong public policing favoring enforcement of our licensing laws regarding the selling of alcoholic beverages." Id.
The present case is indistinguishable from Hastings. The sale of alcoholic drinks is the essence of a pub. The promissory note served to undermine the Massachusetts liquor licensing system and permit prohibited conduct to occur. Both parties willingly and knowingly engaged in this subterfuge in order to achieve their own goals despite the strong public policy concerning control over who may sell alcoholic refreshments. The parties created a sham checking account to conceal the fraud. The promissory note was integral to implement the unlawful operation of the pub because the plaintiff demanded its creation as part of the transaction.
The holding of Hastings, supra, renders the promissory note unenforceable, and judgment enters for the defendant as to the first count.
 III
The third count of the amended complaint relates to a claim that Yeagher fraudulently conveyed real estate to his wife in order to remove this asset from the reach of the plaintiff. This count derives from Yeagher's purported liability on counts one and two. Because the court has ruled for the defendants on these counts, the issue of fraudulent conveyance is nugatory. The court dismisses this count.
 IV CT Page 8293
Turning to the defendants' counterclaims, in their posttrial brief, p. 12, the defendants characterize counts one through four of their amended counterclaim as seeking compensation for damages sustained by them "as a result of the misrepresentations of the plaintiff". These misrepresentations are the plaintiffs' preagreement statements that he held a liquor license which could be transferred to the corporation in order for that corporation to operate a pub. In actuality, the plaintiff had yet to acquire the liquor license from his erstwhile tenant. These counts allege fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and unfair trade practice.
The court concludes that the defendants have failed to prove that any damages flowed from the plaintiff's prevarication. The court arrives at this conclusion because the defendants were ultimately determined to be ineligible for the license. Even if the plaintiff possessed the license when he said he did, no valid transfer could have transpired. This turn of events was unforeseen by all sides. The plaintiff's misstatements on this point were unconnected to the defendants' inability to acquire the license.
The sums of money and work that Yeagher expended to prepare the pub for opening would have been expended in any event. The parties anticipated some delay in transfer of the license because they provided for up to three months delay in their original lease agreement. The defendants learned of the true status of the license within that three month period. Despite this revelation, Yeagher chose to continue to invest time and money preparing the building for his operation.
Having determined that the defendants failed to prove damages, the court renders judgment for the plaintiff as to counts one through four of the amended counterclaim.
 V
The defendants' next claim is set forth in the fifth count of the amended counterclaim and alleges that the plaintiff converted the defendants' $10,000 security deposit as well as the I furnishings and equipment which the defendant had brought to the pub and were present there when the plaintiff locked Yeagher out.
The court deals with these two allegations of conversion CT Page 8294 separately.
 A.
As noted above, the original, written lease terminated on August 20, 1994. By its terms, the plaintiff was obligated to return the deposit because no transfer of liquor license happened by that date.
Neither side has submitted legal authority regarding the law of conversion in Massachusetts. In the absence of evidence as to such law, the court presumes Massachusetts law to mirror Connecticut law. Walzer v. Walzer, 173 Conn. 62, 76
(1977). A conversion occurs when one without authority, assumes and exercises ownership over personal property belonging to another. Zoneni v. Hudon, 48 Conn. App. 32, 38 (1998). An unreturned security deposit can be the subject of conversion. Id.
The plaintiff has wrongfully retained the deposit since August 20, 1994. This retention constitutes a conversion.
 B.
As to the defendants' personal property which allegedly remained in the restaurant when the plaintiff barred Yeagher from reentry, the court finds that the defendants have failed to prove that the plaintiff assumed or exercised ownership over the property before the fire occurred three weeks later. Yeagher never requested access to retrieve specific items during this period. Usurpation of ownership rights to possession rather than denial of access is the hallmark of conversion.
 VI
Finally, the defendants claim that the failure of the plaintiff to refund the security deposit breached the original, written lease. The court agrees.
Clause 37.2 of the agreement clearly required the plaintiff to return the $10,000 after August 20, 1994. The plaintiff has refused to do so.
It should be recalled that the original, written lease expired before the parties embarked on the fraud which rendered CT Page 8295 later agreements unenforceable. The earlier agreement predates the misconduct and remains enforceable. The court enters judgment for the defendants Robert Yeagher and the corporation on this count.
In summary, the court decides in favor of the defendants as to all counts of the amended complaint and as to counts five and six of the amended counterclaim with respect to the return of the security deposit. The court decides for the plaintiff as to counts one through four of the amended counterclaim.
Damages are awarded to defendants Robert Yeagher and the corporation in the amount of $10,000. No attorneys fees are awarded for the conversion because the time and effort reasonably necessary for proof of that portion of count five of the amended counterclaim was a small part of the case and duplicated by count six of the counterclaim.
Sferrazza, J.