[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Jessica Despres, brought this action through her next friend, Kim Vitti, by complaint dated September 27, 1996, against the defendant, the Greenwich Boys and Girls Club Association, Inc. The plaintiff claims that the defendant's negligence and carelessness caused her injury. She seeks money damages, costs of suit and such other and further relief as the court may deem just and proper. On March 19, 1998, the defendant filed an answer and special defense.
In the complaint, the plaintiff claims that her injuries were caused by the negligence and carelessness of the defendant, in that it "failed to provide adequate maintenance of the [playground] equipment and supervision of the use of the equipment by the plaintiff." The plaintiff also claims in her complaint that her injury "was exacerbated by the defendant's employees attempting to provide medical treatment for which they were not qualified." Evidence was presented at a bench trial before this court beginning on March 3, 1999. This court finds that the plaintiff presented no evidence to show that the defendant failed to provide adequate maintenance of the equipment or that the equipment itself was defective. Likewise, there was no evidence or expert testimony presented by the plaintiff that the defendant's employees exacerbated the plaintiffs injury. Therefore, the only remaining issue is whether the defendant was negligent and/or careless in its supervision of the plaintiff. After the close of the plaintiffs case on March 5, 1999, the defendant moved for a directed verdict.
The plaintiff argues that she has established a prima facie case of negligence to withstand the defendant's motion for a directed verdict. She argues that applying the doctrine of res ipsa loquitur to the facts of this case supports the plaintiffs contention that the defendant was negligent and/or careless in its supervision of the plaintiff resulting in her injuries.
"Directed verdicts are not favored and should be granted only when the [trier of fact] could not reasonably and legally reach any other conclusion. . . . Thus, in the context of a res ipsa loquitur case, [i]f the defendant seeks a directed verdict in his [or her] favor, he [or she] must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable persons could no longer accept it. The evidence necessary to do this will vary with the strength of the inference. It takes more of an explanation to justify a CT Page 9155 falling elephant than a falling brick, more to account for a hundred defective bottles than for one. If the defendant shows definitely that the occurrence was caused by some outside agency over which the defendant had no control, that it was of a kind which commonly occurs without negligence on the part of anyone, or that it could not have been avoided by the exercise of all reasonable care, the inference of negligence is no longer permissible, and the verdict is directed for the defendant." (Brackets in original; citation omitted; internal quotation marks omitted.) Giles v. New Haven, 228 Conn. 441, 443-44,636 A.2d 1335 (1994).
"[T]he doctrine of res ipsa loquitur . . . allows the [trier of fact] to infer negligence based on the circumstances of the incident even though no direct evidence of negligence has been introduced. . . . This rule of common sense . . . is but a specific application of the general principle that negligence can be proved by circumstantial evidence." (Citations omitted; internal quotation marks omitted.) Giles v. New Haven, supra,228 Conn. 446.
"The doctrine of res ipsa loquitur applies when three conditions are satisfied: (1) [t]he situation, condition, or apparatus causing the injury must be such that in the ordinary course of the events no injury would result unless from a careless construction, inspection or user[;] (2) [b]oth inspection and user must have been at the time of the injury in the control of the party charged with neglect[;] (3) [t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." (Brackets in original; internal quotation marks omitted.) Gilesv. New Haven, supra, 228 Conn. 446. "Whether the doctrine applies in a given case is a question of law for the court." Id.
The plaintiff presented five witnesses: Robert D'Angelo, Executive Director of the Boys Girls Club; Susan "Sukie" Ginise, Program Director; Phillippa Orszulak, Director of Aquatics and supervisor at the playground on the day of the incident; Kim Vitti, the plaintiffs mother; and Jessica Despres, the minor plaintiff. From the testimony presented at trial, the court finds the following facts: The defendant, Greenwich Boys and Girls Club Association, Inc. ("Boys and Girls Club") is a Connecticut corporation, which owns certain premises located on Horseneck Lane in Greenwich. The Boys and Girls Club operated an after school program on the premises and provided supervised care CT Page 9156 for children. The after school program provided activities for the children, including time spent on the playground. On September 30, 1996, the plaintiff, Jessica Despres, was enrolled in the after school program at the Boys and Girls Club, and was participating in the activities with the other children. On that day, the plaintiff injured her elbow when she fell off of the monkey bars in the playground. The court finds that the "supervision of children" is the priority of the after school program. On the date in question, there was no written policy for child supervision and no mandatory adult-child ratio. Requirements of the defendant for being a supervisor in the after school program include maturity, good character, discipline and compassion with children, and past experience supervising children.
There were four full time supervisors and several part time supervisors employed for the after school program. Although there was no written policy regarding an adult-child ratio, the informal policy of the facility was that one supervisor would be responsible for ten to fifteen children depending on the activity. On September 30, 1994, there were approximately ten to fifteen children on the playground and one supervisor, Phillippa Orszulak, Director of Aquatics, was responsible for them. The children were instructed to stay within the playground area.
Ms. Orszulak supervised the children on the playground many times in the past and, on that particular day, there were no more than fifteen children in the playground and she needed no other assistance to supervise them. Ms. Orszulak was positioned approximately eighteen feet from the monkey bars, in a place where she could see all of the children on the playground. In order to supervise all of the children, she used a "seven second scan" which she learned from her experience as a lifeguard.
Ms. Orszulak saw children playing on the monkey bars that afternoon, but did not see the plaintiff on them. She became aware of the situation when the plaintiff confronted her and told her that she had fallen off the monkey bars. Ms. Orszulak did not see the plaintiff fall off the monkey bars nor did she see her lying on the ground. When the plaintiff confronted Ms. Orszulak she seemed upset, but was not crying.
On September 30, 1994 the plaintiff, Jessica Despres, was seven years old and was enrolled in the after school program at the Boys Girls Club. She was enrolled in the program five days CT Page 9157 a week for a couple of years. The court finds that the plaintiff attended two elementary schools, each with playgrounds, and one year prior to the incident in question, the plaintiff slipped and fell at the Hamilton School. The plaintiff claimed that the fall at the Hamilton School was because of lack of supervision.
The plaintiff had been to the playground at the Boys and Girls Club before and had used the monkey bars on prior occasions. She was the only person on the monkey bars at that time, and there were five or six other kids around that area, either watching her or running around, playing a game. She was on the monkey bars for about five to ten minutes when another boy "dared" her to skip a bar. The plaintiff never tried that before, but had seen others attempt it, and never thought she would fall.
The plaintiff started with her right hand, skipped a bar, and grabbed the next bar with her left had. She then attempted to do it again. She skipped a bar, and attempted to grab the bar with her right hand, but slipped, fell, and hurt her left arm. After she fell, the plaintiff could not move her arm, but did not cry. Instead, she got up and went over to the supervisor. Applying these facts to the doctrine of res ipsa loquitur, this court finds that the plaintiff fails to make out a prima facie case of negligence or carelessness against the defendant. The second requirement under the doctrine of res ipsa loquitur, that "[b]oth the inspection and user must have been at the time of the injury in the control of the party charged with neglect" has been satisfied. Giles v. New Haven, supra, 228 Conn. 446. The defendant was responsible for both the playground equipment and the plaintiff on the afternoon of September 30, 1994. However, the remaining two requirements have not been satisfied.
The plaintiff contends that the first requirement, that "[t]he situation, condition, or apparatus causing the injury must be such that in the ordinary course of the events no injury would result unless from a careless construction, inspection or user," has been satisfied. (Brackets in original; internal quotation marks omitted.) Giles v. New Haven, supra, 228 Conn. 446. However, the facts presented at trial indicate otherwise. The plaintiff argues that her accident would not have occurred but for the defendant's careless and negligent supervision. Specifically, the plaintiff argues that the supervisor, an employee of the defendant, breached her duty to the plaintiff.
This case is similar to that of Wu, Administrator v. Town ofCT Page 9158Fairfield, 204 Conn. 435, 528 A.2d 364 (1987). In that case, the plaintiff administrator sought damages against the defendants for the drowning death of his decedent. The plaintiff alleged, interalia, that the defendants, including the lifeguards, were negligent in the performance of their duties. "While it is undisputed that the decedent drowned, there was no evidence tying any negligence on the defendant lifeguards' part to her death. [O]nly speculation and conjecture could link the plaintiffs injuries to the conduct of the defendants. . . . [T]he evidence at most supports an inference that an accident has [occurred during the defendants' supervision], not that one was produced by the other. The plaintiff has provided no definite basis in the facts from which to draw the latter conclusion. . . . Here, the plaintiff presented no evidence other than that the victim perished in an unwitnessed drowning. The plaintiff failed to establish an unbroken sequence of events casually flowing from the defendant lifeguards' arguably negligent supervision to the decedent's drowning." (Brackets in original; citations omitted; internal quotation marks omitted.) Id., 440.
In the case at bar, it is undisputed that the plaintiff was playing on the monkey bars when she fell and injured her elbow. However, no evidence was presented that the defendant was negligent in its supervision of the plaintiff. The testimony at trial indicated that there was one supervisor at the playground on the afternoon in question. There were approximately ten to fifteen children on the playground at that time. There was no written policy regarding any adult-child ratio for supervision, but the unwritten policy of the defendant indicated that one supervisor was normally responsible for fifteen children on the playground.
The court finds that the supervisor, Ms. Orszulak, was positioned in a place where she could see the entire playground area and performed the "seven second scan" which she learned from her experience as a lifeguard. The court finds that nothing unusual was happening that afternoon and Ms. Orszulak did not see the plaintiff fall off the monkey bars. Like the drowning in Wu, the plaintiff's mishap on the monkey bars was unwitnessed. From the evidence presented at trial, the plaintiff fell off the monkey bars, got up immediately and approached the supervisor to tell her of the incident. The plaintiff was not crying and no commotion was made by other children when she fell.
"A breach of duty by the defendant and a casual connection CT Page 9159 between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence. . . . If the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required." (Citations omitted; internal quotation marks omitted.) Santopietro v. Cityof New Haven, 239 Conn. 207, 225-26, 682 A.2d 106 (1996).
In the Santopietro case, the plaintiff sought damages from, amongst others, the umpires of a softball game. The plaintiff was injured when a bat was thrown by a player. The trial court granted a directed verdict in favor of the umpires because the plaintiff failed to present expert testimony as to the umpires' duty. The Supreme Court upheld the trial court's decision, holding that "the plaintiffs were required to establish by expert testimony that the failure of [the umpires] to act in the present case constituted a breach of a duty, and that the plaintiffs' evidence did not satisfy that burden." Id., 224. The Supreme Court likened the allegations of the plaintiffs to the allegations of professional negligence or malpractice and determined that expert testimony is necessary to produce sufficient evidence that the defendants breached the applicable standard of care. Id.
This court, like the Supreme Court in Santopietro, holds that expert testimony is required to determine the applicable standard of care of the supervisors of an after school program and whether that duty was breached. The plaintiff, in this case, however, produced no expert testimony to those facts. Without such expert testimony, there is no evidence that the defendant provided careless or negligent supervision of the plaintiff. As such, the first element of the res ipsa loquitur doctrine is not fulfilled.
Furthermore, the third requirement of the doctrine has not been fulfilled. The plaintiff failed to establish that "[t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." (Brackets in original; internal quotation marks omitted.) Gilesv. New Haven, supra, 228 Conn. 446. The plaintiff voluntarily went on the monkey bars and voluntarily accepted the dare of the other child to skip bars thereon.
The plaintiff argues that the accident would not have happened had there been proper supervision. This argument is unpersuasive. Even assuming arguendo that there was one CT Page 9160 supervisor, supervising only one child, standing directly below her and warning her to use the monkey bars properly by not skipping any bars, it is still possible that the plaintiff could fall off and injure her elbow. Moreover, the court finds that plaintiff knew how to use the monkey bars and had done so numerous times in the past. Therefore, there was no evidence that the plaintiffs injury was the result of anything other than her own voluntary actions. As such, the third prong of the res ipsa loquitur doctrine was not fulfilled.
 CONCLUSION
The plaintiff presented no expert testimony indicating that the defendant provided negligent supervision to the plaintiff or that the defendant breached its duty of care to the plaintiff. The plaintiff also failed to fulfill all three prongs of the res ipsa loquitur doctrine. As such, the defendant's motion for a directed verdict in its favor is hereby granted and judgment may enter in favor of the defendant.
MINTZ, J.